UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERRI LAWSON-BREWSTER,

    Plaintiff,

v

                                                                          Case No. 4:06-cv-58

                                                                          Hon. Wendell A. Miles

RIVER VALLEY SCHOOL DISTRICT,
a Michigan public body, and
JOSE VERA, an individual,

    Defendants.

_____/

ORDER DENYING PLAINTIFF'S
"MOTION TO ALTER OR AMEND THE JUDGMENT/RECONSIDERATION"

Plaintiff Cherri Lawson-Brewster filed this action against her former employer, the River Valley School District ("the district"), and one of its former school principals, Jose Vera, asserting claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and state law. The court entered summary judgment in favor of the defendants. The matter is currently before the court on plaintiff's "Motion to Alter or Amend the Judgment/Reconsideration" (docket no. 72). The defendants have opposed the motion. The court granted plaintiff's request for a hearing on her motion, which was held on May 20, 2008.

Having reviewed and considered plaintiff's written motion and supporting materials, together with the defendants' written opposition, and having considered the parties' arguments, the court finds no basis for altering its conclusion that the defendants are entitled to summary judgment on all of plaintiff's claims.

**Discussion**

Plaintiff invokes Fed.R.Civ.P. 59(e) and W.D.Mich.L.Civ.R. 7.4(a) as a basis for relief. A motion to alter or amend judgment under Rule 59(e) may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. GenCorp, Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." Id. "Further, under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC, 477 F.3d 383, 395 (6th Cir.2007). "Rather, a motion under Rule 59(e) 'must either clearly establish a manifest error of law or must present newly discovered evidence.'" Id. (citation omitted).

Similarly, a motion for reconsideration under Local Rule 7.4 must also show an error, or "palpable defect," the correction of which must result in a different disposition of the case. Because Rule 59(e) motions are aimed at reconsideration, National Ecological Foundation v. Alexander, 496 F.3d 466, 477 (6th Cir. 2007), a motion for reconsideration may be treated as a motion under Rule 59(e) to alter or amend judgment. Huff v. Metropolitan Life Ins. Co., 675 F.2d 119, 122 (6th Cir. 1982).

**1.**

In her amended complaint, plaintiff alleges, among other things, that she was fired from her position as a janitor with the school district in violation of the FMLA. Her claim of this and other "FMLA Violations" in Count I of her amended pleading provides the basis for federal

jurisdiction. Plaintiff's amended complaint also asserts a series of state law claims, which include gender and disability discrimination, sexual harassment, violation of Michigan's workers' compensation law, and retaliation.

The court's Opinion and Order granting summary judgment is extensive, and its various conclusions will not be repeated here. Although plaintiff's current motion gives lip service to asking the court to reconsider its decision on all of her claims, her brief in support actually addresses only her FMLA claim arising from the events during the days immediately preceding and culminating in plaintiff's termination. The court therefore finds no reason to revisit the substance of any of plaintiff's other claims, either under the FMLA or state law.[1]

Plaintiff has included her own affidavit with her current motion, supplementing her affidavit which she filed with her response to the defendants' motion for summary judgment.[2] In her newly-filed affidavit, plaintiff generally discusses her job duties as well as her symptoms and physical activities during the days before she was fired in December, 2004. As the defendants have correctly noted, plaintiff could have submitted the evidence contained in this affidavit at the time of her response to the motion for summary judgment, and the evidence is therefore not "newly discovered" as required by law. Plaintiff's newly-filed affidavit contains

---

[1] In her amended complaint, plaintiff has also asserted an FMLA claim arising from circumstances surrounding a leave of absence which she took in the spring of 2004, several months before her termination. Plaintiff has not discussed this particular claim in her current motion.

[2] Plaintiff has also included the affidavit of her attorney, which says, in its entirety, that "information attributable to me in the Motion to Alter or Amend the Judgment/Reconsideration is true to the best of my knowledge, information and belief." Presumably, plaintiff has included counsel's affidavit solely for the purpose of attesting to Local Rule 7.1(d)'s requirement to confer with the opposing party to determine whether the motion will be opposed. A party may not raise an issue of fact by simply relying on the affidavit of counsel stating what counsel believes or intends to prove at trial. King v. National Industries, Inc., 512 F.2d 29, 33-34 (6th Cir. 1975).

3

no facts which could not have been included in the affidavit which she did file at the time she responded to the defendants' motion. (Plaintiff conceded as much at the hearing on her current motion.) For this reason, the court – which has reviewed the affidavit – declines to consider it.[3]

Plaintiff's motion rests principally on her assertion that the court erred in concluding that the evidence was insufficient to establish a genuine issue of material fact regarding whether plaintiff suffered from a "serious health condition" as defined by the substantive law applicable to her FMLA claim arising from her final period of absence and termination. Plaintiff argues that the court did not give her the benefit of all reasonable inferences because the court should have recognized that jurors could infer, based on the evidence she has presented, that she was incapacitated for the period required by law.

As part of her burden to demonstrate the required element of a "serious health condition," plaintiff was required to show a period of incapacity of more than three consecutive calendar days. 29 C.F.R. §825.114(a)(2). Plaintiff offered evidence supporting – at best – a period of incapacity of only two days, and even this evidence was minimal, consisting of a bare-bones affidavit by her doctor, Jonathan Osburn. Dr. Osburn stated that plaintiff reported to his office on December 16, 2004 complaining of migraine headaches and "stress emanating from her boss at work." Affidavit of Jonathan Osburn, M.D., ¶ 2. (The boss was presumably defendant Vera.)

---

[3] As the defendants have noted, plaintiff's newly-filed affidavit in some respects contradicts other admissions plaintiff has already made in the case, to the extent that plaintiff now contends that she was essentially bed-ridden during the days before she was fired. For example, plaintiff previously admitted that she traveled to work to drop off her building keys, Plaintiff's Brief in Opposition (docket no. 52) at 6, and to pick up her paycheck. Plaintiff's Dep. (Defendant's Exhibit N) at 107. A party may not create a factual issue by filing an affidavit which contradicts her earlier admissions, including her own deposition testimony. Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir. 1986).

Dr. Osburn also stated that he diagnosed depression and "wrote a note keeping [plaintiff] off work until December 20, 2004" because he "did not think she should work for health reasons." Id., ¶ 3.  Dr. Osburn's affidavit does not elaborate on any particulars regarding plaintiff's condition, and his office notes, which accompany his affidavit, do not indicate that plaintiff was incapacitated.  (Dr. Osburn's notes describe plaintiff as having a "HA" – presumably headache – and feeling "down/blue," with "poor motivation" and "mild anhedonia.")

Plaintiff has conceded that she was not scheduled to work on the weekend consisting of December 18 and 19, 2004.  Therefore, Dr. Osburn's affidavit at best justifies a possible inference that plaintiff was incapacitated – if at all – only on December 16 and 17, 2004, and the court gave plaintiff the benefit of this inference.  What the court did not do is give plaintiff the benefit of an inference that she was incapacitated on December 18 and 19, 2004, which was entirely consistent with case law recognizing that when an illness or injury spans a period of time during which an employee is not scheduled to work, the regulations contemplate that an employee may submit evidence demonstrating an inability to perform other regular daily activities on those days that work is not scheduled.  Haefling v. United Parcel Service, Inc., 169 F.3d 494, 500 (7th Cir. 1999).  (This was also consistent with the facts, which indicate that Dr. Osburn to some degree related plaintiff's condition to work, presumably because plaintiff identified work as the cause of her alleged stress.)

Plaintiff now argues that the court should have given her the benefit of an inference that she was incapacitated during the period *before* she saw Dr. Osburn on December 16, 2004 because depression does not appear overnight and therefore she was presumably depressed on the days before she saw the doctor for her alleged symptoms.  Plaintiff contends that the court

5

itself inferred that plaintiff must have been depressed on the days before December 16, 2004. Because the court made such an inference, plaintiff argues, it should permit the case to be submitted to a jury, which could make the same inference.

The court's comments about the length of time plaintiff might have experienced symptoms appear in a footnote of that portion of its decision addressing the issue of whether she gave her employer timely notice of her intention to take leave.[4] The court merely observed that if plaintiff's "serious medical condition" first presented itself before December 16, 2004, then she did not give the district timely notice, insofar as the regulations provide that even where the need for leave is unforeseeable, it is expected that an employee will give notice to the employer "within no more than one or two workings days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a). Opinion and Order on Defendants' Motion for Summary Judgment at 19-20 n.12. Moreover, the court observed,

> Assuming that plaintiff's depression did not come on overnight (and – because she attributes her depression to her ongoing situation at work – it more likely than not did not surface overnight), she could reasonably predict that her condition could lead her to miss work on occasion for treatment, and she could have given the notice contemplated by the regulations.

Id. at 20 n.12. The court's observation was accompanied by a citation to Collins v. NTN-Bower Corp., 272 F.3d 1006 (7th Cir. 2001), in which the court held that summary judgment was

---

[4] Notice is a required element of plaintiff's FMLA claim, in addition to the element requiring her to show that she suffered from a serious health condition entitling her to leave under the statute. See Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003) (listing elements of claim for denial of FMLA–protected rights).

properly entered in favor of the employer under the FMLA where an employee who suffered from depression simply called in sick. In that case, as in this case, the plaintiff's depression was not the result of an unexpected life event, and therefore the court held that the plaintiff could predict that she might need to miss work on occasion for treatment and give notice to the employer. Id. at 1008.

Plaintiff's argument that the court should recognize an inference that her incapacity surfaced before December 16, 2004 is not persuasive. Recognizing that plaintiff could have experienced symptoms of depression before that date (and could therefore have notified her employer that she might need to take some time off for treatment) is a far cry from recognizing that plaintiff was *incapacitated* for an additional day or number of days. In considering a motion for summary judgment, although the district court must construe all reasonable inferences in favor of the nonmoving party, Twin City Fire Ins. Co. v. Adkins, 400 F.3d 293, 296 (6th Cir. 2005), the court need not draw inferences which are unreasonable. See Audi AG v. D'Amato, 469 F.3d 534, 545 (6th Cir. 2006) ("We will not draw such unreasonable inferences").[5]

---

[5]Plaintiff has also objected to the court's parenthetical use of the phrase "more likely than not" within footnote 12 of its decision; plaintiff argues that the court's use of the phrase suggests that it was improperly applying the standard used in submitting the case to a jury rather than the proper summary judgment standard. However, other courts have used the phrase "more likely than not" or similar language in addressing issues relevant to a motion for summary judgment. See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993 ("in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, Fed. Rule Civ. Proc. 50(a), and likewise to grant summary judgment, Fed. Rule Civ. Proc. 56"); Glaser v. Thompson Medical Co., 32 F.3d 969, 972 (6th Cir. 1994) (if court concludes that evidence supporting a position is insufficient to allow a reasonable juror to conclude that the position "more likely than not" is true, then court is free to prohibit the case from proceeding to a jury); Turpin v. Merrell Dow Pharmaceuticals, Inc., 959 F.2d 1349, 1350 (6th Cir. 1992) (affirming entry of summary judgment in favor of the defendant, holding that scientific evidence that provided the foundation for expert testimony, taken in the
(continued...)

In addition, plaintiff's argument is fatal to her claim, for if plaintiff's condition revealed itself before December 16, 2004, then she unquestionably did not give the district timely notice. As noted above, an essential element of plaintiff's claim for denial of FMLA-protected rights requires her to prove that she gave her employer notice of her intention to take leave. More specifically, as the court has noted, the applicable regulations provide that even where the need for leave is unforeseeable, it is expected that an employee will give notice to the employer "within no more than one or two workings days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a). In this case, there is nothing in the record to indicate that it was "not feasible" for plaintiff to give advance notice that she would need time off work to be treated for depression. Plaintiff has pointed to no evidence indicating that her condition was an emergency (i.e., that she was suicidal or a threat to others) or that she was otherwise prevented from making advance plans for treatment.

Plaintiff has utterly failed to make her case on the issue of notice. Although she conceded during the hearing that she provided the district only with "very brief" information from her doctor indicating that she could return to work on December 20, 2004, plaintiff attempts to shift the burden on the issue of notice to the defendants, arguing that they should have known to request that plaintiff provide them with an FMLA certification. That is not what the law provides, and it would be particularly inappropriate under the facts of this case. To invoke the FMLA's protection for a serious medical condition, an employee must, during her

---

$^5$(...continued)
light most favorable to plaintiffs, was not sufficient to allow a jury to find it "more probable than not" that defendant caused plaintiff's injury).

8

employment, request leave and give the employer notice that she is requesting such leave for a serious health condition that renders her unable to perform the duties of her position. Brenneman v. MedCentral Health System, 366 F.3d 412, 421 (6th Cir. 2004). "The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence. . . . To hold otherwise would create an unreasonable burden for employers, requiring them to investigate virtually every absence to ensure that it does not qualify for FMLA leave." Rask v. Fresenius Medical Care North America, 509 F.3d 466, 472 (8th Cir. 2007) (citation omitted).

  As the court held in Brenneman, although the employee need not expressly mention the FMLA as the source of her right to request such leave, "the critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered [her] unable to perform [her] job." 326 F.3d at 421 (citations omitted). "The eligible employee must also give the employer this substantive notice within the requisite time frame[,]" and, "when the approximate time of the needed leave is unforeseeable, the eligible employee should give the employer notice of the need for the leave 'as soon as practicable under the facts and circumstances of the particular case.'" Id. (citation omitted). Simply providing a doctor's office invoice listing a diagnosis of "depression" does not, under the circumstances of this case, constitute the required notice. See Rask, 509 F.3d at 466, 472-473 (because "[d]epression, like many mental illnesses, is a condition with many variations, . . . [plaintiff] would need to apprise [her employer] of more than the mere fact that she had been diagnosed with something called 'depression' to put them on notice that she had a

serious health condition").

The minimal but essential requirements for proper notice are unquestionably not satisfied here. Plaintiff had missed an entire week of work immediately before her termination. She treated her absence like so many others she had had in the past: she called in sick, and, when pressed, provided the briefest of doctor's notes.[6] Before she was terminated, plaintiff was offered the opportunity to provide the district with information about her condition, apart from the doctor's excuse and office invoice she had already provided. Although by this time plaintiff had already missed work the entire week of December 13 through 17, 2004, she admittedly did not even bother to provide a doctor's note – which was substantively deficient notice – until December 17, 2004. There is also no evidence that plaintiff ever even provided River Valley with a description of her symptoms. Plaintiff did not provide substantively sufficient notice, and certainly not "within no more than one or two workings days of learning of the need for leave"

---

[6]It is apparent from the record that plaintiff resisted providing the district with information documenting her final period of absence. As the court observed in its original decision, plaintiff's own pleading alleges that when Vera told her that the medical information she had provided was "incomplete," plaintiff claimed that she wasn't even supposed to be at the school and refused to talk with him at that time. First Amended Complaint at 5, ¶s 34-35. Plaintiff herself has also provided evidence indicating that Vera wrote a letter to plaintiff repeating his concern that the doctor's note plaintiff had provided was "incomplete" and directing her to appear at the school for a meeting on December 20, 2004. Plaintiff's Exhibit 43. Plaintiff has further provided evidence suggesting that during the December 20, 2004 meeting, plaintiff improperly invoked a federal statute – not the FMLA, but instead what appears to have been the Health Insurance Portability and Accountability Act, or "HIPAA" – as a reason why she would not submit additional documentation from her doctor. Plaintiff's Exhibit 44. This evidence, consisting of the written notes of Bruce Burnett, who was present at the meeting, indicate that plaintiff referenced a "law passed in 2003" in objecting to Vera's request for additional medical information. (Burnett incorrectly spelled the law "HEFA." Although HIPAA was enacted well before 2003, the deadline for covered health care providers to comply with privacy regulations adopted by the Department of Health and Human Services pursuant to the statute was April 14, 2003. 45 C.F.R. § 164.534(a).) Plaintiff's apparent reference to HIPAA requirements appears to have been a misguided attempt to assert the privacy of her medical records in response to Vera's request for more information about plaintiff's absence.

as required by law.

Plaintiff makes no effort to address the <u>Brenneman</u> case or the requirement that she provide timely notice to her employer. [7]  In her brief in support of her current motion, plaintiff nonetheless argues that she provided "adequate notice" to her employer, without addressing the substance of the information which she provided to the district and without touching upon the issue of its timing.  Plaintiff also argues that the district received "actual notice" of her need for leave under the FMLA during the meeting held on December 20, 2004 (during which plaintiff was notified of her termination).  The sole factual support which plaintiff offers for her "actual notice" argument is her contention that the FMLA was "discussed" during the meeting.

Plaintiff's initial affidavit submitted with her response to the defendants' motion for summary judgment contained the following statement: "I recall discussing the FMLA with Mr. Vera and Bruce Burnett on December 20, 2004.  I did not at that time understand its applicability."  Affidavit of Cherri Lawson-Brewster (June 12, 2007) at 3, ¶ 11.[8]  As the defendants have argued, however, plaintiff's vague assertion that the FMLA was simply "discussed" at the meeting provides no evidence of what was said by anyone about plaintiff's

---

[7]In response to the court's questioning during the hearing on her motion, plaintiff conceded that she had not reviewed the <u>Brenneman</u> case.  This is particularly difficult to comprehend, insofar as the defendants relied on the case not only in their reply brief filed in support of their motion for summary judgment, but also in their written response to plaintiff's own current motion.

[8]Plaintiff's affidavit also stated that she "had not before then received a written notice of my rights and obligations under the FMLA."  Even assuming that plaintiff's statement is truthful, she did not offer evidence contradicting that presented by the defendants indicating that the school where plaintiff worked posted several notices of employee rights under the FMLA and other sources of law.  In addition, there is no dispute that plaintiff had earlier that year taken leave under the FMLA, which supports an inference that she had some actual awareness of her legal rights.

rights – or lack thereof – under the statute.  At this stage in the case, it is inexcusable for plaintiff to rely on the statement contained in her affidavit as evidence in support of any element of her claim under the FMLA.   Either plaintiff is being deliberately vague in her affidavit, or her memory of what was said is deficient.  In either case, summary judgment standards do not require the court to permit plaintiff to proceed on this flimsiest of bases.

During the hearing on her motion, plaintiff also referred the court to the testimony of Bruce Burnett, who was present at the December 20, 2004 meeting.  However, Burnett's testimony confirms merely that the FMLA was at some point "brought up" during a meeting; notably,  Burnett – like plaintiff – could not remember neither who mentioned the FMLA nor the substance of what was said.  Burnett Dep. at 26-27, 39.  Because neither plaintiff's own affidavit nor the testimony of Bruce Burnett indicates the substance of what was said at the meeting, or who said it, it is unclear why plaintiff believes this evidence supports an inference either that she asserted rights under the statute or that her employer expressed the belief that the statute provided her with rights in relation to her most recent absence.   Therefore, together these two bits of evidence do not create a genuine issue of fact on the issue of whether plaintiff provided her employer with notice of her intention to take leave under the FMLA.  Given plaintiff's refusal or inability to meaningfully address the issue of notice, the court remains convinced that it ruled correctly in favor of the defendants on her claim that she was denied leave in violation of the FMLA.

Finally, in the apparent recognition of the overwhelming evidence that she did not provide her employer with proper notice of her alleged need for leave under the FMLA, plaintiff repeats her argument that she was illegally fired for failing to provide sufficient notice or to

12

prevent her from asserting rights under the statute.  However, as the court has already noted, there is an absence of evidence that plaintiff's employer had reason to believe that the FMLA was implicated by plaintiff's final absence.  In this respect, this case is in no way like <u>Killian v. Yorozu Automotive Tennessee, Inc.</u>, 454 F.3d 549 (6th Cir. 2000), on which plaintiff has once again relied.[9]  In addition, neither plaintiff's initial affidavit nor Bruce Burnett's testimony provide support for plaintiff's position that she was terminated for asserting rights under the FMLA.  Moreover, the evidence shows that plaintiff was terminated for a cumulation of reasons related to her attendance.  Considering this evidence, together with the lack of evidence that plaintiff's employer had any reason to consider the applicability of the FMLA, the court stands by its conclusion that plaintiff has not created a genuine issue of fact on any claim under the FMLA.

Plaintiff expresses concern that the court's Opinion and Order might have suggested that she had a poor attendance record.  However, it is the defendants who have pointed to plaintiff's attendance record as evidence in support of their motion; they have featured plaintiff's own time cards as Exhibit A to their motion.  Although the court passes no moral judgment on plaintiff's work habits, the facts – which include this well-documented attendance history – indicate that during the week preceding her termination plaintiff was simply taking "sick days" in the manner to which she had become accustomed since early in her employment with the district.  Plaintiff appears to have formed the belief that she had the right to call in sick whenever she chose, so long as she offered a doctor's note to excuse her absence.  However, "[t]he legislative history of

---

[9]As the court noted in its original Opinion and Order, the facts in <u>Killian</u> involved the plaintiff's attempt to extend a period of medical leave already approved by the employer.

the FMLA makes it clear that routine, commonplace illnesses of short duration are not covered by the statute." Beaver v. RGIS Inventory Specialists, Inc., 144 Fed. Appx. 452, 455 (6th Cir. 2005). As it turned out, plaintiff's five-day absence during the second week of December, 2004 occurred after she had been given a "last and final notice" that she would be dismissed for any additional disciplinary infractions. The defendants have presented evidence that plaintiff was terminated for a cumulation of reasons related to her attendance, including excessive absenteeism, multiple instances of being absent from work without providing adequate notice, and multiple absences without an excuse acceptable to the district. Defendants' Exhibit B, ¶ 15; Defendants' Exhibit K. Given plaintiff's history of poor attendance, quite apart from any absences protected by law, the evidence shows that the defendants would have had no reason to believe that plaintiff's presentation of doctor's notes at the conclusion of her last week of missed work was anything more than an attempt to document her absence as usual – and not a request for leave protected by the FMLA.

**2.**

Although plaintiff's brief in support does not address any of her state law claims, her motion itself contains a clause arguing – in the alternative – that the court should decline to exercise supplemental jurisdiction over her "several" state law claims. However, as noted above, plaintiff's brief in support does not address any of these claims. Therefore, plaintiff has not explained the basis for her position that the court should not have exercised jurisdiction over the state law claims.

In its Opinion and Order granting summary judgment, the court devoted a considerable amount of attention to the question of supplemental jurisdiction, ultimately concluding that it

should exercise supplemental jurisdiction over plaintiff's state law claims. Although simply dismissing these claims without prejudice would obviously have been a much easier course for the court to take, no party had argued that the court should do so – in particular the plaintiff, who of course chose to file all of her claims in federal court in the first place. Under the circumstances, the court is perplexed as to why plaintiff would suggest a dismissal without prejudice at this late stage of the proceedings, particularly as new legal positions are generally inappropriate on motions for reconsideration, absent some new intervening legal authority. Because plaintiff has chosen not to explain the basis for her suggestion that the court should have declined to exercise supplemental jurisdiction, the court sees no reason to revisit its decision to do so.

## Conclusion

**Motion denied.**

So ordered this 29th day of May, 2008.

    /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge

15